1  **Raye Mitchell (SBN 172664)**
   **Attorney at Law**
2  **1300 Clay Street Suite 600**
   **Oakland, CA 94612**
3  **510.836.2097 (ph)/510.380.6431 (fax)**
4  **raye@rayemitchell.com**
   **Attorney for Plaintiff**
5

6

FILED

OCT 16 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

7  ## IN THE UNITED STATES DISTRICT COURT

8  ## FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  LAILA KIA,

Civil Case No.: **C12-5317**

11       Plaintiff,

12  vs.

**COMPLAINT:**
**Federal Claims**

13  **The California Public Employees'**

1) **ERISA (COBRA Violations)**

14  **Retirement System (CalPERS), and**

2) **29 U.S.C. § 1132) and 29 U.S.C.  1166,**

15  **Rahim A. Kia, an individual.**

**State Pendent Claims**

16

2) **Intentional Infliction of Emotional Distress**

17

18       Defendants.

3) **Fraud**

4) **Negligent Misrepresentation**

19

20

5) **Intentional Interference with Prospective Advantage**

21

22

6) **Negligent Interference with Prospective Advantage**

23

24

7) **Request for Declaratory Relief-Hold Harmless**

25

**JURY DEMANDED**

26

27  ### PRELIMINARY STATEMENT

28  1.  The Plaintiff is an Iranian woman that is the victim of both cultural abuse and oppression

that designate and treat women as property of men and second class or no-class citizens. The

---

Complaint  1

1300 Clay Street Suite 600 Oakland, CA 94612
510.836.2097 (ph)/510.836.2374 (fax)

1  cultural and emotional abuse of such standards were transferred and transported to the US by the

2  Defendant Rahim Kia when he moved himself and his family to the US in about 1987. This is a

3
   case involving a long-term relationship between the Plaintiff and the Defendant Rahim Kia that
4
5  started with a marriage in Iran in 1979. Defendant Rahim Kia engaged in a long term pattern

6  and scheme of abuse, fraud and other conduct to cause emotional distress to the Plaintiff.

7  Among the acts described in this complaint was an effort by the Defendant to interfere with

8  Plaintiff's access to her health insurance benefits and her rights under the retirement plan of
9
   which she was a qualified beneficiary.
10

11  2.  To compound the abuse and oppression sustained by her former abusive husband,

12  CalPERS, the agency that manages the retirement and health benefits of retired workers that

13  worked for California public agencies, failed and refused to provide the Plaintiff with all notices

14  concerning her health insurance as required by law. As a result of the conduct of CalPERS and
15
   or Rahim Kia or both independently or acting together, Plaintiff Kia has been deprived of her
16
17  rights to COBRA insurance coverage after CalPERS learned of the Qualifying Event. This

18  litigation seeks to redress the numerous wrongs imposed upon the Plaintiff by the Defendants.

19                          **JURISDICTION AND VENUE**

20
   3.  This Court has jurisdiction pursuant to 28 USC §§ 1331 and 1343(3) for claims brought
21
22  under the United States constitution and federal laws and under 28 USC § 1367 for Plaintiff's

23  state claims.

24  4.  Venue lies in this District pursuant to 28 USC § 1391(b). The events giving rise to this

25  complaint occurred primarily in Alameda County or the damages sustained by the plaintiff

26  occurred in Alameda County, California.
27

28

                                  **PARTIES**

Complaint  2                          1300 Clay Street Suite 600 Oakland, CA 94612
                                      510.836.2097 (ph)/510.836.2374 (fax)

5.  Plaintiff, Lailia Kia, (aka "Laylia Kia") is an Iranian born women who was married to Rahim A. Kia in May 1979 in Iran. Ms. Kia came to the USA in the 80's as wife of Rahim Kia and lived as husband and wife until separated in 1995. The parties obtained a status only divorce in 2001 in Yolo County California. Ms. Kia holds US citizenship.

6.  Defendant Rahim A. Kia was educated in the United States and obtained a PhD in engineering and travels back and forth between the US and Iran.  Mr. Kia owns property in California and uses a US mailing address for various business and personal matters. Mr. Kia alleges he is retired and receives retirement benefits from The California Public Employees' Retirement System ("CalPERS") and identifies himself as the primary employee benefit plan participant. Ms. Kia was a Qualified Beneficiary under the Plan as defined below.

7.  Defendant The California Public Employees' Retirement System ("CalPERS") is believed to be a California corporation located and doing business in the County of Alameda at 1340 Treat Boulevard Walnut Creek, CA 94597 and its website states that " we provide retirement and health benefits to more than 1.6 million public employees, retirees, and their families and more than 3,000 employers."

## FACTUAL ALLEGATIONS

### *CalPERS Failure to Provide COBRA Notices and Failure to Respond to Written Inquires.*

8.  At some point in the past, at a date Plaintiff is unaware of at this time, Defendant Rahim Kia enrolled in the retirement and health plans of his employer CalTRANS in or about 1987. At the time of his enrollment, Ms. Kia did not receive any of the notices concerning the retirement plan and any notices of reporting requirements.  Ms. Kia and the minor children of Mr. Kia were enrolled in the plan as qualified beneficiaries under the plan.

9.  In or about 1995, Mr. Kia retired from CAlTRANS and CalPERS became the employer responsible for administration of the retirement and health benefits under the employer's

---

Complaint  3                                      1300 Clay Street Suite 600 Oakland, CA 94612
                                                  510.836.2097 (ph)/510.836.2374 (fax)

1    retirement plan. In or about 1995, Mr. Kia and Ms. Kia had separated. Mr. Kia, Ms. Kia and the

2    minor children continued on the heath insurance plan as provided by CalPERS. Mr. Kia

3    continued to use the mailing address of Ms. Kia for the period after the separation and the

4

5    address was changed as Ms. Kia moved or changed addresses. Ms. Kia did receive separate

6    insurance coverage cards in her name, but otherwise all notices concerning the plan were sent to

7    Mr. Kia.

8        10. In or about October 2001, Mr. Kia and Ms. Kia obtained a status only dissolution. Ms.

9
     Kia, not proficient in English and having only a high school education did not completely
10
     comprehend the notion of a status only divorce and assumed, as the family court judge told her,
11

12   that they were still married. After the status only dissolution, nothing of significance changed.

13   Defendant Rahim Kia continued to receive the whole of the retirement benefits and continued to

14   include the Plaintiff and the children on the CalPERS heath insurance plan.

15
         11. However, unbeknownst to Ms. Kia, the court order of October 2001 of the status only
16

17   dissolution was never reported to CalPERS. Instead, Mr. Kia continued to assure Ms. Kia that

18   she and the children were covered under his plan. Neither CalPERS nor Mr. Kia provided Ms.

19   Kia, as a Qualified Beneficiary (29 U.S.C. § 1167(3)(A)(i) (defining "qualified beneficiary" as,

20
     inter alia, "the spouse of the covered employee[.]"), of any notice requirements on when and how
21

22   to notify CalPERS of any Qualifying Event, both are terms defined by the plan.

23       12. In or about September 2011, Mr. Kia turned 65 years of age and thus became eligible for

24   Medicaid and Medicare. Coverage under the CalPERS heath benefits of the retirement plan

25   terminated, as this was a Qualified Event. Pursuant to the plan rules and COBRA, all Qualified

26   Beneficiaries under the plan were entitled to notice of termination of coverage and eligibility for
27
     COBRA coverage. Ms. Kia was not notified of the termination of coverage by CalPERS and
28
     CalPERS never provided notice of eligibility or any other information.

13. Ms. Kia was never provided notice of COBRA eligibility and CalPERS never responded to her efforts to open an appeal of the decision that Ms. Kia was ineligible for COBRA. On numerous occasions, Ms. Kia contacted CalPERS in writing and requested copies of any notices sent to her and other information on the plan. CalPERS never responded with any information and never perfected her appeal of the determination that she was not eligible for COBRA notification.

## FIRST CAUSE OF ACTION (CALPERS)

### ERISA (COBRA VIOLATIONS)
### 29 U.S.C. § 1132) and 29 U.S.C. 1166,

14. Plaintiff Laylia Kia incorporates all above allegations herein by reference.

15. Under 29 U.S.C. § 1166, Plaintiff Laylia Kia was entitled to notice at the time of commencement of coverage under the plan of the rights provided under such the plan. In addition, Plaintiff Kia was entitled to notice of eligibility of COBRA coverage within 14 days of CaLPERS learning of a qualified event. Further and in addition, CalPERS is required to respond to any written inquiries seeking information and other items concerning the plan, notices issued and any other information concerning the rights of the Qualified Beneficiary under the plan.

16. Defendant CalPERS failed to provide Plaintiff Kia with any of the required noticed regarding her rights under the plan at any time and CalPERS failed to provide Plaintiff Kia with any COBRA notices or notices of eligibility or denial of eligibility within the required statutory timeframes. CalPERS further failed and refused to respond to Plaintiff's written request for information concerning the plan, copies of any notices and correspondence CalPERS alleged were sent to the Plaintiff and CalPERS failed and refused to respond to Plaintiff's request to appeal any determination by CalPERS that Plaintiff was not eligible for COBRA coverage.

1300 Clay Street Suite 600 Oakland, CA 94612
510.836.2097 (ph)/510.836.2374 (fax)

17. Plaintiff contends that the above acts are some and not all of the failures of CalPERS to comply with the notice requirements of 29 U.S.C. § 1166 and that Plaintiff Kia is entitled to statutory damages of $ 110 per day for each day that CalPERS has failed and refused to provide all required notices to Plaintiff Kia from the date of Mr. Kia's enrolment in the plan in 1987 through the present and continuing until said notices are provided according to law. As of the date of filing said estimate is approximately $ 1,084,050.00.

18. Plaintiff further contends that she is entitled to other relief as the court deems proper, including, the right to recover benefits due to her under the terms of his plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

## SECOND CAUSE OF ACTION (RAHIM KIA)

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (2001-PRESENT)

19. Plaintiff Laylia Kia incorporates all above allegations herein by reference.

20. Plaintiff alleges that Defendant Rahim Kia has engaged in a continuous scheme and course of conduct to inflict distress upon the Plaintiff. While this conduct originated during the marriage (not the basis of this action), the conduct continued through the present. As a result of Defendant's actions, Plaintiff has had to consult and obtain psychiatric treatment and her official status is that of an abused and battered spouse/battered spouse syndrome. The history and factual discussion of her experiences with Defendant are summarized in a Declaration of her treating physician, Dr. Benjamin Kaufman, M.D. and attached hereto as Exhibit A and incorporated into this Complaint by reference. The declaration is not intended to be a comprehensive summary of every act of extreme and outrageous conduct upon the Plaintiff by the Defendant Kia.

---

21. The Defendant Kia has effectively exercised a campaign of terror against the Plaintiff since the parties divorced in 2001. The Defendant Kia has used trickery to obtain money from the Plaintiff and obtain her property. Plaintiff did not want to live in Iran as she found the culture oppressive for women, despite being an Iranian. At one point, Plaintiff tricked the Plaintiff into returning to Iran for a family event and a chance for her to visit her family that still lives there. When Plaintiff attempted to leave the country on her own freewill, the Defendant effectively kidnapped her and prevented her from existing the country. Despite the fact that the parties had long ago divorced, Defendant reported to the Iranian authorities that "his wife" was attempting to leave the country without his authorization. Defendant then executed false papers alleging that his "wife" has property that belonged to him and issued a complaint to prevent her departure. Iranian police at the airport physically apprehended the Plaintiff under the direction of the Defendant as she attempted to leave the country against her former husband's approval. She was handled physically and 'ruffed-up' by the police as the Defendant had told the police very negative and disgraceful things about the Plaintiff. In order to leave the custody of the police and the country, Defendant demanded that the Plaintiff sign an irrevocable power of attorney over her real property so that he could sale the property to himself. The Plaintiff executed the documents under fear of further violence and under duress that she would not be released by Defendant to return to the US.

22. When the Plaintiff returned to the US distraught, the Defendant's campaign of harassment and terror continued when the Defendant learned that the Plaintiff had been forced to sale the property she received as a gift from her father as her only means of salvaging her dignity and her property. When the Defendant learned of the sale of the property he was irate and continued and continues to make threats directly and indirectly toward the Plaintiff. He has further vowed that if she should ever return to Iran, he will forbid her from ever returning to the

---

Complaint 7

1300 Clay Street Suite 600 Oakland, CA 94612
510.836.2097 (ph)/510.836.2374 (fax)

US as he will put a stop on her exist papers as he did before. As a result of the threats and the threats of violence, Plaintiff is no longer able to return to Iran to visit any remaining family members. The threats are continuous and regular.

23. Whenever the Plaintiff attempts to exercise her rights and or free herself from the conduct of the Defendant, the Defendant Kia does something to harass or cause the Plaintiff further emotional distress and or act with an intentional disregard for the possibility of causing emotional distress upon the Plaintiff. In or about September 2011, Defendant Kia learned that at age 65 his heath insurance benefits through CalPERS would terminate, as he was eligible for Medicaid. Defendant Kia was aware that Plaintiff Kia was a qualified beneficiary entitled to notices under the plan, changes in the plan and notice of COBRA coverage eligibility. At some point in anticipation of forthcoming notices concerning the changes to eligibility to coverage under the plan, the Defendant notified CalPERS of a change of address of record (previously some notices had been going to Plaintiff at her residence in Berkeley since about 2010). The Defendant then changed the address on all health insurance notices so that Plaintiff would not receive any heath insurance notices, cards or statements. He arranged for the items to go to his daughter (who was estranged from the Plaintiff).

24. In addition to intentionally having Plaintiff kidnapped in Iran and acting to interfere with her health insurance coverage, Defendant would systematically harass and haze the Plaintiff by telling her and others that their adult son is not mentally disabled (despite begin determined to be mentally disabled by the US government and his treating healthcare provider) and or that if he is mentally disabled, she made him in that condition so that she can collect $ 600.00 a month in benefits for caring for him.

25. Still further, the Defendant has exploited the educational disparity between the parties and has exploited Plaintiff's frail and fragile mental and physical heath and conditions.

---

**Complaint 8**

1   Defendant has routinely tricked the Plaintiff into incurring large sums of debt to lend him money

2   for the stated purposes of supporting their daughter or the son or in an effort to help the son get

3
4   well. Only after receiving promises that he would repay the money to the Plaintiff since he

5   understood she had no money and was obtaining a loan from a family friend would the

6   Defendant say that he had no intentions of repaying the money. In the alternative he would

7   require her to come to Iran and work in his office at a rate of $ 2000.00 as a condition to get the

8   money back.

9
    26. Plaintiff contends that the above acts are extreme and outrageous conduct with the intent
10
11  to cause, or with reckless disregard for the probability of causing, emotional distress upon the

12  Plaintiff.

13  27. Plaintiff further contends that she suffers extreme or severe emotional distress; and that

14  the defendant's extreme and outrageous conduct was the actual and proximate cause of the
15
16  plaintiff's extreme or severe emotional distress.

17  28.  Plaintiff contends that Defendant's acts were intentional and or of such a careless

18  disregard for the possibility of causing emotional distress upon the Plaintiff that she is entitled to

19  punitive damages in no less than $ 500,000.00 dollars.

20

21  ### THIRD CAUSE OF ACTION (RAHIM KIA)

22  ### FRAUD

23  29. Plaintiff Laylia Kia incorporates all above allegations herein by reference.

24
    30. Plaintiff contends that beginning on or about 2008, the Defendant orchestrated and
25
26  executed a continuous scheme to defraud the Plaintiff and obtain money from the Plaintiff based

27  on the plan that the Plaintiff could and would obtain money from her family friend Reza Valliyee

28  in order to help her children if Defendant asked.  In this case, under the false premise that the

---

**Complaint 9**                    1300 Clay Street Suite 600 Oakland, CA 94612
                                    510.836.2097 (ph)/510.836.2374 (fax)

money he would borrow would be for the benefit of the daughter and that he Rahim Kia would immediately repay the Plaintiff when he returned to the US. In fact, Rahim Kia never intended to repay the loans and only made the representations as a means to trick the Plaintiff into using her close relationship with Mr. Valliyee to get her to get money for him. When Plaintiff made her best effort to get the money back from the Defendant so she could repay her debt to Mr. Valliyee, Mr. Kia generated a false document he entitled "Sale Contract." In the document, which both parties signed and executed here in California and where Mr. Kia affixed his State of California Professional Engineer seal and it professes that he is selling a piece of property in Dubai to her and that she has paid "$90,000 already as down and shall pay as much as she can in the future." Plaintiff was ignorant of the nature of the document and relied on his presentations that the document was his promise to repay the money he borrowed for the daughter and the son and for Rahim Kia's other personal uses.

31. Defendant knew at the time he made the representation to repay the money and that the money he was borrowing was for the benefit of the children was a false statement. Defendant represented that he had the present ability to repay the money as his consulting business was profitable and Defendant also knew that he had no intentions of selling the property in Dubai and had no intentions of returning the money he obtained from the Plaintiff by trick and misrepresentations. Defendant made the statement in an effort to deceive the Plaintiff and to trick her into obtaining money from her friend Mr. Valliyee. Defendant has a longstanding grudge against Mr. Valliyee and believes that Mr. Valliyee is the cause of his failed marriage and that the Plaintiff is the cause of every other problem in his life. Defendant believes that the Plaintiff has shamed his name and his family.

32. Plaintiff relied to her detriment on the representations by the Defendant that the money would be repaid because the Defendant asserted he was helping their children and that the

---

**Complaint 10**

1300 Clay Street Suite 600 Oakland, CA 94612
510.836.2097 (ph)/510.836.2374 (fax)

Plaintiff had a duty to help him help the children. Given her state of mind and relationship with the Defendant and history of abuse, the reliance was reasonable as she had little or no ability to make her decisions absent the state of fear.

33. As a result of the above facts and misrepresentations of facts, Plaintiff suffered damages of at least $ 90,000.00 or more.

## FOURTH CAUSE OF ACTION (RAHIM KIA)

### NEGLIGENT MISREPRESENTATION

34. Plaintiff Laylia Kia incorporates all above allegations herein by reference.

35. Defendant made repeated representations to the Plaintiff that he had sufficient income to repay the money he was borrowing and that he would in fact repay the money. Defendant further presented to the Plaintiff that the money was for the benefit of their children and that after he failed to repay the money he borrowed from the Plaintiff that he would sell her and she would be the owner of the Dubai property. In fact, the Defendant never intended to repay the money and now alleges that he never had any income to pay the money back and alleges that he is retired and only has income of $ 1000.00 per month. Furthermore, the Defendant actually denies he ever borrowed the money and denies he even made representations that he would repay the money.

36. Plaintiff relied upon Defendants representations that he had sufficient income and assets to repay the money he sought for the loans. Plaintiff relied upon his representations of his income and assets because Defendant had made reference to his consulting business, and its success in Iran and engaged and employed Plaintiff's nephew to assure the Plaintiff that the consulting business was successful and in fact generated sufficient income to the Defendant to support his repayment to the Plaintiff.

37. As a result of Defendant's misrepresentations and misstatements of facts concerning his income and assets, Plaintiff borrowed money from her family friend to lend to Defendant. Defendant has failed and refuses to repay the Plaintiff and the Plaintiff is now indebted for at least $ 90,000 or more to a third party as a result of the Defendant's misrepresentations of facts concerning his income and assets to obtain the loans.

## FIFTH CAUSE OF ACTION (RAHIM KIA)

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE

38. Plaintiff Laylia Kia incorporates all above allegations herein by reference.

39. Plaintiff Laylia Kia had an economic relationship with CalPERS as a Qualified Beneficiary for health insurances services under the qualified retirement plan and health insurance benefits for retirees and their spouses ("The Plan").

40. The Plan provided health insurance benefits for the Plaintiff and ERISA law and regulatory scheme provided that all participants are entitled to notices and notices of their rights under The Plan.

41. Defendant Rahim Kia had actual knowledge of Plaintiff's relationship with CalPERS and the provision for health insurance and rights to notices for COBRA coverage upon termination of participation in The Plan .

42. Defendant by himself or by and through his agents, such as his daughter, Defendant acted to intentionally to disrupt the relationship between Plaintiff Laylia Kia and CalPERS as to Laylia Kia'a access to information and notices concerning The Plan and her rights therein. Specifically, some of the acts by the Defendant, but not an exclusive list, include, Defendant obstructing or change the mailing address on the health insurance plan without notice to the Plaintiff and doing so with the intention that the Plaintiff not know the status of important developments concerning The Plan.

1300 Clay Street Suite 600 Oakland, CA 94612
510.836.2097 (ph)/510.836.2374 (fax)

1   43. The above conduct was intentional.

2   44. Defendant intentionally interfered with Plaintiff's Prospective Advantage of her right to

3
4   elect COBRA coverage within 14 days of CalPERS receiving notice of a qualifying event. To the

5   extent that Plaintiff has lost such rights, it is because the Defendant and or CalPERs interfered

6   with her rights to receive notice to seek such election.

7   45. Defendant actually disrupted the relationship between Plaintiff Kia and CalPERS

8   regarding The Plan by changing the mailing address of for all notices regarding The Plan and by
9
10  failing to provide sufficient information to the Plaintiff to enable her to protect her rights going

11  back to October 2001.

12  46. Defendant's action caused and continued to cause Plaintiff Kia substantial economic

13  harm and disruption in her ability to seek affordable health insurance converge.  Plaintiff

14  contends the actions of the Defendant Kia were intentional and thus subject to punitive damages
15
16  of no less than $ 500,000.00.

17              **SIXTH CAUSE OF ACTION (RAHIM KIA)**

18            **Negligent Interference with Prospective Advantage**

19  47. Plaintiff Laylia Kia incorporates all above allegations herein by reference.
20
21  48. Plaintiff Laylia Kia had an economic relationship with CalPERS as a Qualified

22  Beneficiary for health insurances services under the qualified retirement plan and health

23  insurance benefits for retirees and their spouses ("The Plan").

24  49. The Plan provided health insurance benefits for the Plaintiff and ERISA law and
25
26  regulatory scheme provided that all participants are entitled to notices and notices of their rights

27  under The Plan.

28

---

50. Defendant Rahim Kia had actual knowledge of Plaintiff's relationship with CalPERS and the provision for health insurance and rights to notices for COBRA coverage upon termination of participation in The Plan .

51. Defendant by himself or by and through his agents, such as his daughter, Defendant acted with gross disregard for the rights of the Plaintiff and negligently disrupted the relationship between Plaintiff Laylia Kia and CalPERS as to Laylia Kia's access to information and notices concerning The Plan and her rights therein.  Specifically, some of the acts by the Defendant, but not an exclusive list, include, Defendant obstructing or change the mailing address on the health insurance plan without notice to the Plaintiff and doing so with the intention that the Plaintiff not know the status of important developments concerning The Plan.

52. Defendant negligently interfered with Plaintiff's Prospective Advantage of her right to elect COBRA coverage within 14 days of CalPERS receiving notice of a qualifying event. To the extent that Plaintiff has lost such rights, it is because the Defendant and or CalPERS interfered with her rights to receive notice to seek such election.

53. Defendant actually disrupted the relationship between Plaintiff Kia and CalPERS regarding The Plan by changing the mailing address of for all notices regarding The Plan and by failing to provide sufficient information to the Plaintiff to enable her to protect her rights going back to October 2001.

54. Defendant's action caused and continued to cause Plaintiff Kia substantial economic harm and disruption in her ability to seek affordable health insurance converge.

## SEVENTH CAUSE OF ACTION (ALL DEFENDANTS )

## REQUEST FOR DECLARATORY RELIEF-HOLD HARMLESS

55. Plaintiff Laylia Kia incorporates all above allegations herein by reference.

---

Complaint  14

56. Plaintiff Laylia Kia never received any initial or subsequent notice of her rights under The Plan and no initial notices providing for notice requirements by the employee or a qualified beneficiary of any Qualified Event. Defendant Rahim Kia received all notices, if any were sent by CalPERS and no such notices were sent to Plaintiff. To the extent that CalPERS alleges that it provided health insurance for Plaintiff from the period October 2001 forward when none was authorized or covered under the Plan and seeks reimbursement or offsets for any payments or claims that were made from that date forward should be the sole liability of the Defendant Rahim Kia and none as to Plaintiff Kia. Defendant CalPERS bears the burden to establish it provided the initial notices to the Plaintiff Kia. Plaintiff Kia was ignorant of any notices requirements, whereas Defendant Rahim Kia was in a superior position to have notice and receive notice of The Plan as he was the responsible employee under The Plan.

57. Defendant CalPERS' potential claims for restitution or reimbursement from Plaintiff and or any third party claims for reimbursements for rejected insurance claims or Defendant Rahim Kia should pay reversed insurance payments.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests that this Court:

1. As to Defendant CalPERS, award statutory damages according to 29 U.S.C. § 1132 at a rate of $ 110.00 per day since the notices became due in 1987 and continuing until present.

2. Damages according to proof for emotional distress and injury caused by Defendant Rahim Kia's conduct;

3. Restoration of Plaintiff's right to elect COBRA notice within 14 days of CalPERS learning of a Qualified Event and payments for all medical expenses that would have been covered under COBRA coverage;

1300 Clay Street Suite 600 Oakland, CA 94612
510.836.2097 (ph)/510.836.2374 (fax)

1    4. Declaratory relief holding affirming and holding Plaintiff harmless from any claims of

2       fraud  and restitution by CalPERS as to Rahim Kia for his failure to notify CalPERS of

3       the October 2001 Qualified Event of the dissolution.

4

5    5. Damages according to proof for any other damages attributed to Defendant's Kia's

6       conduct including damages of at least $ 90,00 for the money Defendant obtained from

7       Plaintiff;

8    6. Award Plaintiff attorney fees and reasonable costs pursuant to 29 U.S.C. § 1132 et seq for

9       ERISA violations and

10

11   7. Award any other relief that this Court deems just and equitable in the interest of justice.

12

13   Dated: Oakland, California

14       October 15, 2012

15

16

17   **R. Mitchell**
     **Attorney at Law**

18   **Attorney for Plaintiff**

19

20

21

22

23

24

25

26

27

28

---

**Complaint  16**                              1300 Clay Street Suite 600 Oakland, CA 94612
                                                510.836.2097 (ph)/510.836.2374 (fax)

**EXHIBIT A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

04/02/2012   12:24     916454``96

1  ALLAN R. FRUMKIN, ESQ. (SBN 50543)
2  CAROLYN N. PETTIFER, ESQ. (SBN 245810)
   LAW OFFICES OF ALLAN R. FRUMKIN, INC.
3  3180 CROW CANYON PLACE, SUITE 255
4  SAN RAMON, CA 94583

5  Telephone Number: (925) 355-1555
   Facsimile Number:  (925) 355-0555
6
   Attorneys for Respondent
7  LAILA KIA

8                    SUPERIOR COURT OF CALIFORNIA

9                         COUNTY OF YOLO

10

11 |                                    ) Case No. FL98-1858
   | In re The Marriage of:            )
12 |                                    ) DECLARATION OF DR. BENJAMIN
   | Petitioner:  RAHIM KIA            ) KAUFMAN. M.D.
13 |                                    )
   |                                    )
14 | v                                  )
   |                                    )
15 | Respondent: LAILA KIA             )
   |                                    )
16 |_____

17

18      I, BENJAMIN KAUFMAN, M.D., declare as follows

        1. I am the treating doctor for Laila Kia ("Respondent") and, if called to testify, I
19
   could and would testify competently to all matters described below.
20
        2. Respondent has been my patient since 2003.
21
22 Underlying Relevant Facts

        3. I am informed and believe and thereon allege the following:
23
              • Respondent and Rahim Kia ("Petitioner") lived in Iran from 1979 to 1987
24
                when they moved to Colorado. Petitioner took a teaching job at the
25
                Colorado State University.
26
              • On December 31, 1988 Respondent gave birth to the parties' daughter,
27
                Denize. At about this time, Respondent – living under the coercive
28

                          Declaration of Benjamin Kaufman, M.D.                        1

04/02/2012  12:24    916454....

shadow of Petitioner -- started a daycare operation to add to the family income.

- At about this time, Petitioner began hitting and verbally assaulting Respondent during arguments because Petitioner wanted to return to Iran to start his own business and, Respondent wanted to stay in America.

- The family moved to the Sacramento-Davis area where Respondent operated a daycare center out of the Davis Athletic Club. Petitioner ran the health bar in that club.

- Respondent ran up the parties' credit debt deliberately to benefit from bankruptcy, before leaving to go to Iran with $70,000 in cash advances.

- By 1998, Petitioner was back in Iran and Respondent and the two children remained in the United States. Respondent worked odd jobs, attended school and in 2008, she graduated from Sacramento State University.

- In about 2008, the parties' son, Sahand, developed a schizophrenic thought disorder to a severe degree requiring extensive attention, hospitalization and medication. Sahand remains disabled and house-bound.

- When Respondent was six months pregnant with Sahand, Petitioner struck Respondent. Respondent believes that blow induced her labor because Sahand was born three months premature weighing only 3.5 pounds.

- Sahand was born in Iran during the Iran-Iraq war. The war affected the electricity supply to the hospital and, as a result, affected Sahand's care while he was in an incubator.

- Respondent is now certified as a disabled person and is suffering from deteriorating health. Prospects for her employment are not good. She is

1   able to gather some part-time work but she has to care for her mentally-
2   disabled son.

3   •   Respondent is struggling financially whereas Petitioner's consulting
4   service has resulted in his making multi-millions.

5   •   Petitioner has gained the confidence of the parties' daughter, Denize,
6   who, to Respondent's deep distress, has not been in contact with
7   Respondent for a period of two years.

8   History of Abuse

9   4. Respondent's psychiatric status is that of an abused and battered spouse. She
10  is a deeply anxious person who is undergoing relentless stress internally and
11  externally. She does not have a normal or natural relationship with her daughter and,
12  she is the sole provider of care and support for her mentally disabled son who is the
13  only person living with her.

14  5. Respondent's speech reflects the intensity of anxiety as she tries to explain the
15  challenges of her life which have a strong cultural foundation. She is of quite high
16  intelligence, with sound memory and fund of knowledge. She is forthright in answering
17  questions, is able to express her thoughts well, which are free of any delusional
18  content. She is not paranoid nor is she suicidal beyond expressing despair at some of
19  the more challenging elements of her life.

20  6. Respondent experienced her marriage as a battered spouse of unequal stature
21  before the law represented by her husband and the culture of Iran. Petitioner drilled
22  into her mind: "You can't go to college;" "You don't have a brain for education;" "You
23  cannot earn a degree;" "Quit dreaming and do your housewife chores and duties."

24  7. Respondent endured much physical, emotional and mental abuse by Petitioner
25  who viewed Respondent as being subservient to him. Because, according to Iranian
26  culture, Respondent was a second class citizen, she was not allowed to make any
27  independent decision. Petitioner knew no boundaries with his abuse. Petitioner hit
28  and verbally berated Respondent on many occasions in front of their children.

04/02/2012   12:24   916454¨96        BEN KAUFMAN

8.   In 2008, Petitioner offered Respondent $2,000 a month to move back to Iran and to work in his office.  Respondent returned to Iran for a relative's wedding. Petitioner turned her away when she went to him for financial assistance.

9.   When Respondent attempted to return to the United States following the wedding, Petitioner put a stop to her exit Visa.  In Iran, husbands have the ability to do that and Petitioner stopped Respondent from boarding her plane back to the United States.  Respondent was actually pulled out of the boarding line by security guards.

10. Respondent first entered counseling from 2001 until 2003 when she became my patient.

11. The diagnosis I proffer is generalized stress-anxiety disorder based on chronic stress deriving from marital-familial/cultural failures and disappointments.

12. The most recent visit to me in the office before Respondent moved to Berkeley was in 2010.  Since then I have maintained telephone contact with her (up to and including March 26, 2012) and, I continue to prescribe the medications described below.  She has never been known to me to take excessive medication or used any inappropriately:

- Adderall XR 20 mg, 4 tabs per day;
- Prozac 20 mg, one tab daily;
- Xanax 0.5 mg up to 4 tabs daily.

13. Respondent has sleep disturbances, nightmares including distressing arousal over normal.  She has difficulty with recall and is hyper vigilant.  She has interrelationship difficulties that stem entirely from the events described above.  Her mental state remains chronic and is essentially unremitting in terms of general anxiety. Because of her sleep disorder she can be irritable and hyper aroused associated with intense fear and a sense of helplessness.

///

///

///

Declaration of Benjamin Kaufman, M.D.                                                4

04/02/2012  12:24     9164541196                    BEN KAUFMAN

1    I declare under penalty of perjury under the laws of the State of California that

2   the foregoing is true and correct except as to those matters stated upon information

3   and belief, and as to those matters, I believe them to be true.

4       Executed in _Sacramento Ca_ on _4/2/12_, 2012.

5

6

7       BENJAMIN KAUFMAN, M.D.

8       _Signature by Facsimile_

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Benjamin Kaufman, M.D.                                 5